**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | |
| : | **CRIMINAL NO. 18-CR-338 (TJK)** |
| **JEFFREY RAPHIEL CLARK,** : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully recommends that the Court sentence the defendant to 10 months of imprisonment, which the government submits is a sentence which comports with the Sentencing Guidelines. In support of its recommendation, the United States relies on the following points and authorities, and any other such points and authorities that it may cite at a hearing.

**BACKGROUND**

1.      On October 27, 2018, at approximately 9:54 a.m., Robert Bowers, a white supremacist who has made anti-Semitic statements on internet posts, attacked the Tree of Life Synagogue in Pittsburgh, Pennsylvania, killing 11 people who were attending a religious ceremony in the synagogue. The FBI's investigation of Bowers revealed that Bowers' followers on social media included a District of Columbia resident, Jeffrey Raphiel Clark, Jr., who resided in Northwest, Washington, D.C. During its investigation of Clark, the FBI received information that Clark was a heavy user of marijuana, and that the smell of marijuana was present in Clark's home as recently as October 27, 2018, and November 4, 2018. Clark had tried to stop using marijuana in the past, but had been unable to do so. The FBI also learned that the defendant was the registered owner of two firearms in the District of Columbia: a Remington Arms 1911 R1 handgun, and a

Mossberg Maverick 88 shotgun. On November 9, 2018, family members who were concerned about the defendant took possession of the firearms and turned them over to the FBI.

2. On November, 9, 2018, an arrest warrant and criminal complaint were issued for Jeffrey Clark charging him with, inter alia, one count of Unlawful Possession of Firearms by a Person who is a Unlawful User of or Addicted to any Controlled Substance, in violation of 18 U.S.C. § 922(g)(3). Agents of the FBI arrested the defendant on November 9, 2018, and during the execution of a corresponding search warrant at Clark's residence, officers noted that the entire house smelled like marijuana. In Jeffrey Clark's bedroom, and a room adjacent to his bedroom, agents seized a marijuana growing operation including approximately ten plants that were 6-8 inches tall; marijuana smoking devices including pipes, bongs, and what appeared to be THC vapor pods; and a marijuana grinder. On a deck to the residence, officers located a marijuana plant that was approximately 30-36 inches tall. Agents also located flyers from a neo-Nazi organization; boxes of ammunition, including hollow-point ammunition; a rope noose hanging above the defendant's bed; body armor and helmets; and a Nazi flag containing the handwritten inscription "Hail Victory."

3. During a post-arrest interview, the defendant admitted that he had possessed the Remington Arms 1911 R1 handgun, and the Mossberg Maverick 88 shotgun in the District of Columbia. The defendant also admitted that he was a frequent and long-time user of marijuana, specifically, that he had smoked marijuana on a nearly daily basis since he was fifteen-years-old. On November 10, 2018, the defendant tested positive for marijuana when he was tested following his arrest in this case.

4. On or about November 15, 2018, the grand jury returned a two-count indictment

charging the defendant with one count of Unlawful Possession of a Firearm by a Person who is an Unlawful User of a Controlled Substance, in violation of Title 18, United States Code, Section 922(g)(3); and one count of Possession of a Large Capacity Ammunition Feeding Device, in violation of 7 D.C. Code, Section 2506.01(b) (2001 ed.).

5. Following his arrest on November 9, 2018, the defendant was preventively detained pending trial.

6. On July 18, 2019, the defendant pled guilty to Count One of the indictment charging him with violating Title 18, United States Code, Section 922(g)(3). The defendant acknowledged as part of his guilty plea in this case that in October of 2018 he was a habitual user of marijuana, and was simultaneously the registered owner of two firearms in the District of Columbia: a Remington Arms 1911 R1 handgun, and a Mossberg Maverick 88 shotgun, which he had purchased and registered in 2016.

7. As a result of his plea of guilty to violating 18 U.S.C. § 922(g)(3), the defendant faces a maximum statutory sentence of ten (10) years of imprisonment; a fine of $250,000, pursuant to 18 U.S.C. § 3571(b)(3); and a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

**SENTENCING GUIDELINES**

8. The government agrees the defendant's criminal history falls within Criminal History Category I.[1] The applicable base offense level is 14. *See* U.S.S.G. § 2K2.1(a)(6); *see also, United States v. Yarbrough,* 131 F. App'x 1, 2 (2d Cir. 2005). The government agrees that defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of 12. Accordingly, the Sentencing Guidelines range is a period of imprisonment of 10 months to 16 months. In this case supervised release is discretionary, not mandatory, pursuant to U.S.S.G. § 5D1.1(a).

**LEGAL PRINCIPLES**

9. "As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining the defendant's sentence. *Gall v. United States,* 128 S.Ct. 586, 596 (2007). While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity that courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" *id.* at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). The Supreme Court "accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 128 S.Ct. at 562-63 (quoting *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007)).

---

[1] The presentence report was not available at the time of this filing.

**SENTENCING RECOMMENDATION**

10.     The Government submits that a sentence of 10 months imprisonment represents a sentence that falls within the Guidelines range, and is the minimum sentence that should be imposed by this Court based upon the sentencing criteria under 18 U.S.C. § 3553(a).

11.     First, in examining the nature and circumstances of the offense, the defendant's conduct leading to this conviction, combining firearms and controlled substances, is intrinsically dangerous. *See, e.g. United States v. Carter*, 669 F.3d 411, 420 (4th Cir. 2012) (marijuana users "would not be immune from the deleterious effects of using illicit drugs that the government might be able to substantiate, such as the loss of self-control, which threaten the safety of others."); *United States v. Winchester*, 916 F.2d 601, 606 (11th Cir.) ("The title of the statute, the Gun Control Act of 1968, leaves no doubt that the statutory purpose is to limit or control the possession of firearms. The statutory structure indicates that, in enacting section 922(g), Congress sought only to bar the possession of firearms by certain types of persons that it considered dangerous."); *United States v. Bena*, 664 F.3d 1180, 1183 (8th Cir. 2011) ("this court observed that Congress sought to 'keep firearms out of the possession of drug abusers, a dangerous class of individuals,' and concluded that § 922(g)(3) was 'the type of "longstanding prohibition[ ] on the possession of firearms" that *Heller* declared presumptively lawful.'").

12.     Second, in evaluating the history and characteristics of the defendant, it is important to recall the defendant's pre-arrest conduct and mindset. As described in detail in the government's detention memorandum [ECF Doc. No. 5], the defendant's online postings, statements, and items found inside his home, evidenced an individual with a deep-rooted hatred for certain minorities and a penchant for glorifying violence. Added to the inherently dangerous combination of firearms and drugs, the defendant's then-held views plainly enhanced his potential danger to the

community.

13. Third, a 10-month period of incarceration, followed by the maximum period of supervised release as recommended by the government below, reflects an appropriate balancing of the § 3553(a) factors.

14. While on supervised release, in addition to the standard conditions, this Court should impose the following conditions: the defendant shall 1) participate in all recommended drug treatment and testing; 2) participate in any recommended mental health treatment; 3) seek employment, vocational training, or additional education; 4) not engage in any threatening behavior in person or on social media; 5) shall not possess any firearms; 6) shall not reside in any dwelling where firearms are present; and 7) if requested by the FBI, agree to threat-assessment meetings with the FBI up to four times per year.

15. Pursuant to 18 U.S.C. § 3583(c), the Court shall consider the factors enumerated in 18 U.S.C. §§ 3553 (a)(1), (a)(2)(B)-(D), and (a)(4)-(a)(7) when determining whether to impose a period of supervised release, and if so, the duration and conditions of release. For the reasons stated above, the nature and circumstances of the offense and the history and characteristics of the defendant warrant the maximum period for supervised release.

16. With respect to 18 U.S.C. §§ 3553 (a)(2)(B) – adequate deterrence to criminal conduct – the defendant will have served at least 10 months in prison following his first conviction. It is unknown to the government precisely how this period of incarceration has affected the defendant, however, the defendant completed high school and attended college, indicating that he has the capacity to learn from this experience. The defendant's sentence should also serve to deter others by alerting them to the serious risk of prosecution faced by those who engage in the simultaneous use of controlled substances and possession of firearms.

17. With respect to 18 U.S.C. §§ 3553 (a)(2)(C) – protecting the public from further crimes of the defendant - as a result of his felony conviction in this case, the defendant is prohibited from purchasing or possessing firearms in the future. This legal prohibition provides an important measure of protection to the public. This protection will be enhanced by a period of supervised release to insure the defendant's compliance with all applicable laws and insure that he has access to the drug treatment that he clearly needs, and mental health treatment if necessary. In combination, the defendant's felony conviction and a period of supervised release will maximize the protection of the public.

18. Regarding 18 U.S.C. §§ 3553 (a)(2)(D) –providing the defendant with needed educational or vocational training, or medical care - the maximum period of supervised release will provide structure for the defendant to receive substance abuse treatment and/or mental health treatment and counseling. Further, the defendant will gain access to vocational training and/or additional educational opportunities. Prior to his arrest in this case, despite family support and resources, the defendant was unemployed, living at home, using controlled substances, and playing video games. This aimless lifestyle likely engendered the defendant's hatred towards minority groups and advocation of violence. Given the defendant's background and continuing family support, a period of supervised release with the conditions proposed by the government will provide the defendant with the necessary structure and incentive to move toward an independent and productive life.

19. Pursuant to 18 U.S.C. §§ 3553 (a)(4) – (a)(7) – consideration of established sentencing ranges, pertinent policy statements, avoiding sentencing disparities, and the need for restitution - the specific conditions of supervised release suggested by the government align with the mandatory and discretionary conditions of release established by U.S.S.G. § 5D1.3, and are

consistent with the policy statements contained in § 5D1.3(c) and (d) regarding standard and special conditions of supervised release, in particular the special conditions regarding firearms, substance abuse treatment, and mental health treatment contained in §§ 5D1.3(c)(10), (d)(4) and (d)(5).

The government submits that a minimum sentence of 10 months imprisonment, followed by the maximum period of supervised release including the conditions recommended by the government, serves the interests of justice and appropriately balances the applicable sentencing factors under 18 U.S.C. § 3553(a).

**WHEREFORE**, for the foregoing reasons, the United States respectfully recommends that: (i) the Court impose a sentence of 10 months of incarceration; and (ii) impose a period of 3 years of supervised release.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By:         /s

JOHN CUMMINGS
Assistant United States Attorney
Bar No. 986573
555 Fourth Street, N.W., Room 11-824D
Washington, DC   20530
John.cummings@usdoj.gov
(202) 252-7271