IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA                CR No. 1:18-cr-00338-TJK-1


v.                                      Washington, DC
                                        Friday, September 13, 2019
                                        10:00 a.m.

JEFFREY RAPHIEL CLARK, JR.,


              Defendant.
- - - - - - - - - - - - - - - -x
_____

                    TRANSCRIPT OF SENTENCING
          HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                   UNITED STATES DISTRICT JUDGE
_____


APPEARANCES:

For the United States:      John M. Cummings, Jr., Esq.
                            U.S. ATTORNEY'S OFFICE
                            Judiciary Center Building
                            555 Fourth Street, NW
                            Washington, DC 20530
                            (202) 353-9424

For the Defendants:         David W. Bos, Esq.
                            FEDERAL PUBLIC DEFENDER FOR THE
                            DISTRICT OF COLUMBIA
                            625 Indiana Avenue, NW
                            Suite 550
                            Washington, DC 20004
                            (202) 208-7500

Court Reporter:             Timothy R. Miller, RPR, CRR, NJ-CCR
                            Official Court Reporter
                            U.S. Courthouse, Room 6722
                            333 Constitution Avenue, NW
                            Washington, DC 20001
                            (202) 354-3111


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1              **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  Your Honor, this is criminal

3     matter 18-338, United States of America v. Jeffrey Raphiel

4     Clark, Jr.

5              Present from the probation office is Carmen Perez.

6              Will counsel please approach the podium and state

7     your appearance for the record.

8              MR. CUMMINGS:  Good morning, Your Honor.  John

9     Cummings on behalf of the United States.

10             THE COURT:  Good morning, Mr. Cummings.

11             MR. BOS:  Good morning, Your Honor.  David Bos on

12    behalf of Mr. Clark, who's present.

13             THE COURT:  All right.  Good morning, Mr. Bos.

14             Good morning, Mr. Clark.

15             We are here for the sentencing of Mr. Clark, who

16    has pled guilty to one count of unlawful possession of

17    firearms by a person who is an unlawful user of a controlled

18    substance pursuant to 18 United States Code Section

19    922(g)(3).

20             I have received and reviewed the presentence

21    report and the sentencing recommendation from the probation

22    office and sentencing memoranda from both the Government and

23    the defendant.

24             Is there -- are there any other documents or

25    materials that I need to review?

1          MR. CUMMINGS:  Not for the Government, Your Honor.

2          MR. BOS:  No, Your Honor.

3          THE COURT:  All right.  Mr. Clark, this sentencing

4    hearing is going to proceed in four steps and all the while,

5    I want you to keep in mind the seriousness of why we're

6    here.  You committed and pled guilty to a federal crime, and

7    today's proceeding is about the consequences that you will

8    face as a result of your decision to commit that crime.

9          The first step of today's hearing is for me to

10   determine whether you have reviewed the presentence report

11   and whether there are any outstanding objections to that

12   report and, if so, to resolve those objections.

13         The second step is for me to determine what

14   sentencing guidelines and sentencing range applies to your

15   case based on your criminal history and considering any

16   aggravating or mitigating factors that may warrant a

17   departure under the sentencing guidelines manual.

18         The third step is for me to hear from the

19   Government, from your counsel and from you, if you wish to

20   be heard.

21         And the last step requires me to fashion a just

22   and fair sentence in light of the factors that Congress has

23   set out for me to apply in 18 United States Code 3553(a)

24   and, as part of this last step, I will actually impose the

25   sentence along with other required consequences of the

1    offense.

2            The final presentence report and sentencing

3    recommendation was filed in this matter on September 5th,

4    2019.

5            Does the Government have any objection to any of

6    the factual determinations set forth in that report?

7            MR. CUMMINGS:  The Government does not, Your

8    Honor.

9            THE COURT:  All right.  And let me ask the same of

10   Mr. Bos.

11           MR. BOS:  No, Your Honor.

12           THE COURT:  All right.  Mr. Clark, you can address

13   me from there.  If you just stand up and speak in the

14   microphone, you can do it from there.  That's fine.

15           Sir, are you fully satisfied with your attorney,

16   Mr. Bos, in this case?

17           THE DEFENDANT:  Yes, I am.

18           THE COURT:  All right.  And do you feel you've had

19   enough time to talk with him about the probation office's

20   presentence report and the papers that the Government's

21   filed in connection with your sentencing?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  All right.  You may be seated, sir.

24           And I will accept the facts, as stated in the

25   presentence report, and the presentence report, then, will

1    be my findings of fact for purposes of this sentencing.

2           The presentence report lays out the probation

3    office's calculation of the advisory guideline range that

4    applies in this case.  I will attempt to summarize it as

5    follows:

6           As far as the offense level goes, first, as a

7    preliminary matter, Congress has imposed a statutory maximum

8    sentence for the offense to which Mr. Clark has pled guilty.

9    The statutory maximum is 10 years.

10          As far as the sentencing guidelines go, the base

11   offense level is 14 -- that's United States Sentencing

12   Guideline 2K2.1(a)(6) -- although Mr. Clark has demonstrated

13   acceptance of responsibility in a manner that entitles him

14   to a 2-level reduction under 3E1.1(a) and, therefore, prior

15   to consideration of any departures or variances, Mr. Clark's

16   total offense level is 12.

17          Is there any objection to the calculation of that

18   offense level?

19          MR. CUMMINGS:  Not from the Government.

20          MR. BOS:  No, Your Honor.

21          THE COURT:  We now turn to determining Mr. Clark's

22   applicable criminal history category.  There are no criminal

23   history points.  So his criminal history category is a I.

24          I assume there are no objections to that criminal

25   history calculation.

1          MR. CUMMINGS:  Not from the Government.

2          MR. BOS:  No, Your Honor.

3          THE COURT:  All right.  So given an offense level

4   of 12 and a criminal history category of I, the guidelines

5   range here is 10 months to 16 months, and since the

6   applicable guideline range is in Zone C of the sentencing

7   table, the minimum term of incarceration may be satisfied by

8   -- or the minimum term may be satisfy -- satisfied by a

9   sentence of imprisonment, a sentence of imprisonment that

10  includes a term of supervised release with a condition that

11  substitutes community confinement or home detention provided

12  that at least one half of the minimum term is satisfied by

13  imprisonment.

14          Are there any objections to this sentencing

15  guideline calculation?

16          MR. CUMMINGS:  Not from the Government, Your

17  Honor.

18          MR. BOS:  No, Your Honor.

19          THE COURT:  All right.  I'll now expect -- I'll

20  now discuss the remaining applicable penalties in terms of

21  supervised release, probation, fines and forfeiture.

22          As for supervised release, under 18 United States

23  Code 3583(b)(2), the Court may impose a term of supervised

24  release of not more than three years.  And under 5D1.2(a)(2)

25  of the guidelines, the recommended term of supervised

1   release is one to three years.

2           As far as probation goes, under the statute the

3   defendant is eligible for not less than one nor more than

4   five years' probation because the offense is a Class C

5   felony, but since the applicable guideline range is in Zone

6   Z [sic] of the sentencing table, he, then, becomes

7   ineligible for probation under the guidelines.  That's 5B1.1

8   of the guidelines.

9           In terms of fines, the maximum fine for this

10  offense is $250,000 and under 5E1.2(c)(3) of the guidelines,

11  the recommended fine is between $5,000 and $55,000.  There's

12  also a mandatory special assessment of $100 under 18 United

13  States Code 3013(a).

14          Let me ask, again, both counsel, have I stated

15  accurately the statutory and guidelines framework under

16  which we are operating with regard to Mr. Clark?

17          MR. CUMMINGS:  Yes, Your Honor.  For the fine

18  calculation, I believe, again, the minimum fine is 5,500,

19  not 5,000.

20          THE COURT:  All right.  With that correction --

21  and Mr. -- first of all, let me just ask -- let me make

22  sure.  Mr. Bos, do you agree with that correction?

23          MR. BOS:  I do, Your Honor.

24          THE COURT:  All right.  And let me just --

25          (Brief pause.)

1           Correct.  Okay.  So again, the recommended fine is

2      between $5,500 and $55,000.

3           All right.  Having determined the applicable

4      guidelines sentence, the next step is for me to consider

5      departures from the guidelines sentence.  The presentence

6      report does not include any departure grounds, and I don't

7      believe the sentencing memoranda reflect a request for a

8      departure.  Is that true?  Let me ask both counsel to

9      confirm that.

10           MR. CUMMINGS:  Correct for the Government, Your

11      Honor.

12           MR. BOS:  Yes, Your Honor.

13           THE COURT:  All right.  And now, finally, I must

14      consider the statutory factors that Congress set out in 18

15      United States Code 3553(a) and ensure that I impose a

16      sentence that is sufficient but not greater than necessary

17      to comply with the purposes of sentencing.  These purposes

18      include the need for the sentence imposed to reflect the

19      seriousness of the offense, to promote respect for the law

20      and to provide just punishment for the offense.  The

21      sentence should also afford adequate deterrence to criminal

22      conduct, protect the public from future crimes of the

23      defendant and to promote rehabilitation.  And in addition to

24      the guidelines and policy statements, I must consider the

25      nature and circumstances of the offense; the history and

1    characteristics of the defendant; the need for the sentence

2    imposed to comply with the purposes I just mentioned; the

3    kinds of sentences available and the applicable guideline

4    ranges; the need to avoid unwanted sentence disparities

5    among defendants with similar records who have been found

6    guilty of similar conduct; and the need to provide

7    restitution to victims -- any victims of the offense.

8            So let me turn to the Government, then, and ask if

9    they wish to be heard on the applications of the factors set

10   forth in 3553(a) and otherwise make a sentencing

11   recommendation.  And, Mr. Cummings, if you could, in

12   particular, discuss the conditions that you feel are

13   appropriate for supervised release.  In particular, I

14   noticed the Government -- and I'll ask Mr. Bos to address

15   this, too -- the one that caught my eye is your request to

16   -- for me to order as a condition of supervised release that

17   Mr. Clark not engage in any threatening behavior in person

18   on a -- or on social media.  That's Page 6 of your memo.

19   That just strikes me as, you know, possibly difficult to

20   police and difficult for him to know.  I mean, obviously, at

21   some point, something becomes a threat; it may become a

22   crime; and then it's covered with other restrictions, but I

23   just wonder about whether that's a wise condition.  Anyway,

24   but, Mr. Cummings, please.

25           MR. CUMMINGS:  And I'm happy to address that.

1          THE COURT:  Please.

2          MR. CUMMINGS:  And I think, you know, I want to

3     focus on what is the area of dispute between the parties

4     which is really not only the conditions, as the Court has

5     just pointed out, but the length of supervised release.  And

6     I think the crux of the successful sentencing in this case

7     actually comes in part from the defense's sentencing memo

8     where, on the bottom of Page 5, you know, noting that the

9     defendant committed suicide -- I'm sorry, the defendant's

10    brother committed suicide shortly before his arrest, the

11    sentencing memo says, Edward's suicide, coupled with

12    Mr. Clark's detention at the D.C. Jail for the last 10

13    months, has caused Mr. Clark to reevaluate many of the

14    choices he has made in his young life, especially those

15    choices that brought him to the attention of law

16    enforcement.

17          I think, looking back at what happened, it wasn't

18    just that it -- Mr. Clark was -- came to the attention of

19    law enforcement.  His own family -- the people who know him

20    the best -- were extremely concerned about what was going on

21    with Mr. Clark.  I mean, that's how bad things were.  And,

22    as we've said before -- and I know Judge Harvey noted and, I

23    think, this Court appreciates -- there was really a toxic

24    combination of things going on, the combination of guns and

25    drugs which Congress has spoken to.  We cite numerous cases

1  discussing that.  It is just inherently dangerous to combine

2  those two things, and you add into that the hatred that at

3  least was present and very -- Mr. Clark's very outspoken

4  about his hatred both online and in his conversations with

5  the FBI following his arrest.

6          Now, two of those three things are, I think,

7  easily managed, you know?  In terms of the guns, Mr. Clark

8  now has a felony conviction.  He is prohibited from owning

9  guns, possessing guns, being anywhere near guns.  In terms

10  of drug use, hopefully through whatever period of supervised

11  release there is or supervision there is, Mr. Clark will

12  have the advantage of the drug treatment being made

13  available to him; drug testing to make sure that he is in

14  compliance.  The tricky thing out of those three is, how do

15  you deal with the hatred?  And, hopefully, Mr. Clark has had

16  time to reflect.

17          THE COURT:  Or is it appropriate for me to deal

18  with the hatred?

19          MR. CUMMINGS:  You know, I think it is because of,

20  again, when the Court considers the characteristics --

21  that's one of the things the Court has to consider -- to be

22  very clear, and as the Government said in its pleading,

23  there is no evidence that Mr. Clark was planning an attack;

24  that he intended to act on what was some very overtly stated

25  hatred, anger toward different groups and, as I've said

1    before, as reprehensible as that may be, Mr. Clark has a

2    right to hold those beliefs.  The difficulty is when you

3    have somebody holding those beliefs who is -- also has

4    the -- has these other things going on.

5         So I think the Court, in terms of protecting the

6    community and to make sure that Mr. Clark is moving in a

7    positive direction, because I think he can, I think trying

8    to have some oversight of what is going on with Mr. Clark is

9    helpful and important for everyone involved, and that's one

10   of the reasons why we suggest, among other things, the fact

11   that if the FBI requests it, to have these check-ins up to

12   four times a year with the defendant.  They're experts at

13   this.  They do threat assessments all the time.  That should

14   also signal to Mr. Clark that, Yes, they are still paying

15   attention to me.  I do still need to monitor myself.  And

16   I'll be interested to hear what Mr. Clark has to say if he

17   speaks today about where he is mentally about that.  But to

18   be clear, this Court has no right and the Government is not

19   asking the Court to, in any way, punish Mr. Clark for his

20   beliefs which he's entitled to have, but, again, I think

21   when we look at his characteristics in combination with what

22   was going on with him and one looks at what happens -- is

23   happening in our society, you know, in recent months and

24   weeks, you know, that combination of factors is important to

25   monitor.

1    So when we looked at, kind of, what we're

2    recommending in terms of, you know, beyond the just standard

3    conditions, you know, one of the things that seemed to have

4    really riled Mr. Clark up and really brought him to the

5    attention was how he treated social media and some of the

6    things he said on social media.  And, again, we're not

7    looking to interfere with Mr. Clark's First Amendment

8    rights.  He has those.  He doesn't have to agree with the

9    Government; he doesn't have to like everybody, but he can't

10   threaten people.  And I think for somebody who is in

11   Mr. Clark's position and has Mr. Clark's background, it's

12   important for him to understand that if he is engaging in

13   threatening conduct online -- and I appreciate -- I think,

14   to the Court's question, it's, kind of, like the old

15   statement about pornography.  Like, what is it, you know?

16   What's threatening?  What's not?  And there's a lot that

17   goes into figuring out what is threatening.

18       And so I think having that as a condition of

19   release is important, because it doesn't require the

20   Government necessarily to wait until he's committed what is

21   clearly a criminal violation provable beyond a reasonable

22   doubt; that for somebody with Mr. Clark's background who has

23   this combination of guns, drugs and hatred and who, by his

24   own admission -- and I won't use the term he used -- was,

25   kind of, engaged on this very provocative, confrontational

1    online presence, that it is important to have that

2    monitored.

3            Now, will the probation department monitor it?

4    No, my understanding is, they don't, but, again -- I mean, I

5    think Mr. Clark has come to people's attention.  He is

6    somebody who I'm sure that the FBI will want to monitor.

7    It's one of the reasons we want to do these threat

8    assessments.  And so I think there is the possibility that

9    without an additional burden on the U.S. Probation

10   Department, it could come to the Court's attention that

11   Mr. Clark is approaching that line again.

12           And the goal, to be clear, is not to stifle

13   Mr. Clark's First Amendment rights.  It's to make sure he

14   stays on the correct side of the line because, again, people

15   don't always believe this about prosecutors, but, you know,

16   the success is Mr. Clark goes on to become a productive

17   member of society.  He is 31 years old.  He went to a

18   well-respected private school here.  He had the opportunity

19   to go to college.  I know, in listening to his statement

20   with the FBI, he reads a great deal.  He is an articulate

21   person.  He is somebody who seems to have all the tools to

22   go out and be somebody and do something.  And one of the

23   reasons we're asking for three years instead of two is to

24   give Mr. Clark the maximum guidance and support to become

25   self-sufficient and to become productive because, as we said

1     in the sentencing memo, I think when you look at Mr. Clark's

2     potential and you looked at where he ended up, you know, my

3     experience, having done this for a while, is when you're

4     sitting at home doing nothing; you've been getting high and

5     messing around with guns and playing video games, it's easy

6     to fall into this pattern of hatred, you know?  You're not

7     working with people; you're not interacting with people;

8     you're not being a member of society, and that's what we

9     need to keep Mr. Clark away from, is, kind of, going back

10     into that cave or echo chamber, I think they call it, where

11     just this, kind of, hatred just echoes in his head; he's not

12     a productive member of society; he starts to blame other

13     people for his problems; and just the hatred spins from

14     there.

15        So I think, given Mr. Clark's history and the

16     nature of the charges here, they are legitimate requests

17     from the Government, understanding that there are

18     enforceability issues and understanding that there are First

19     Amendment issues that we can't trample on.  So I think in

20     addition to -- again, I don't want to repeat everything in

21     our sentencing memo.  I think those are the Government's

22     concerns and why we believe those conditions are appropriate

23     and why we believe the additional year of supervised --

24     supervision is appropriate in this case.

25        Thank you, Your Honor.

1          THE COURT:  All right.  Thank you.

2          Mr. Bos?

3          MR. BOS:  Your Honor, I'm going to actually have

4    Mr. Clark address most of the concerns that the Government

5    just raised, but I just wanted just to share with the Court

6    just a couple of things in addition to our sentencing

7    memorandum.

8          We do have some concerns about the request by the

9    Government with the supervised release conditions for the

10   very points that the Court raised, although I would say

11   this; that I'm somewhat conflicted because I am as confident

12   as I can be with Mr. Clark that the Court can impose that

13   condition and he will successfully complete those

14   conditions.  I think it's hard to make this allocution

15   without the Court first hearing from Mr. Clark, but I'm

16   going to do so anyways.

17         I want to make sure that the record is clear.  The

18   reason why the weapons were recovered by the family member

19   had nothing to do with activity that Mr. Clark had been

20   engaged in involved with other people but rather the death

21   of his brother by suicide by guns.  And, again, I want to

22   make sure that the Court understands; that the Government

23   understands; that the public understands that Mr. Clark had

24   no intention to engage in any type of criminal conduct that

25   would threaten the community.  And, in fact, you know, this

1    is a case where Mr. Clark properly registered the firearm in

2    the case.  We're talking about marijuana which, of course,

3    is serious and you should not be, you know, smoking

4    marijuana and even having weapons in your household, but it

5    is not somebody who, I think, is going to hit the streets

6    and, all of a sudden, have a craving for crack cocaine or

7    methamphetamine or things like that.  More importantly, he

8    has the community support with his family to make sure that

9    he doesn't run afoul of the laws in the community.

10            So Your Honor, the Court asked and -- last time

11   when we asked for Mr. Clark to be released that, Listen, I

12   haven't seen any evidence so far that Mr. Clark really has

13   turned that corner.  I anticipate in about five minutes,

14   you're going to hear about that because, as the Court, I

15   think, hopefully would assume -- or not necessarily assume

16   but may suspect, Mr. Clark was, kind of, living in a fantasy

17   world on the Internet and in which there's really no

18   accountability for anything that you say or pretty much --

19   or what you do, and because of that -- he did receive some

20   notoriety because of that and, actually, in some ways, it

21   was, kind of, thrilling for him; right?  I mean, here is

22   somebody who's, kind of, sitting, you know, in-home on the

23   Internet, and yet people all across the country, kind of,

24   know, you know, who he is because of the outlandish and

25   really vile things that he has said, but then he sees the

1    consequences in the most dramatic way with the death of his

2    brother and the impact that that that has had on his family,

3    as well; that this isn't a joke; that these words do matter;

4    and that these words can be extraordinarily hurtful.

5         And so, Your Honor, we are asking the Court adopt

6    the recommendation of the 24 months of supervision.  I'm not

7    suggesting that 36 months isn't [sic] unreasonable, but I am

8    telling the Court that I suspect I'll be back here in about

9    12 months or 18 months asking the Court to terminate his

10   supervised release successfully because he's been 100

11   percent compliant.  So I mean, I don't like to, kind of, get

12   into, kind of, a "put up or shut up" position with the

13   Government, but in the 10 months that I've had a chance to

14   spend with Mr. Clark and see the changes that have occurred

15   to him since the death of his brother -- and, again, I think

16   that this would have happened whether or not he was at the

17   D.C. Jail or not -- that was really the triggering event

18   that's caused a sea change in his attitude with the

19   community.

20        Having said that, Your Honor, I also think that --

21   in fact, and I know, because Mr. Clark shared with me

22   yesterday some of what he intends to say to the Court today

23   -- that having been over at the D.C. Jail has been a really

24   eye-opening experience for Mr. Clark who had come from a

25   relatively -- not relatively -- a cloistered existence, and

```
 1    now having been exposed to a much more diverse community and
 2    finding that he's not as fearful and not as angry at that
 3    community really has helped him develop, and I think that
 4    now is the time for Mr. Clark to have to prove both to the
 5    Court, to the community and to the Government that he is the
 6    changed man that I certainly represented him to be.  I think
 7    if the Court gives him that opportunity, the Court will find
 8    that that was a well-served opportunity for Mr. Clark.
 9              THE COURT:  All right.  Well, Mr. Clark has the
10    right to make a statement or present any information to
11    mitigate his sentence that he would like to.  So I invite
12    him to come up to the podium now.
13              (Brief pause.)
14              THE DEFENDANT:  Thank you, Your Honor.
15              I have -- if it's okay with you, I'd like to -- I
16    have notes or --
17              THE COURT:  It's perfectly fine.
18              THE DEFENDANT:  -- I'd like to read, if that's
19    okay with you.
20              THE COURT:  Sure.
21              THE DEFENDANT:  Thank you.
22              I'm reading this to share with you how I became a
23    defendant in your courtroom and, more importantly, how my
24    experiences over the past year have changed how I see the
25    world.  I hope this gives you a clear picture of who I want
```

1   to be in order that my sentence is accurate and appropriate

2   to what I have done and who I want to be.

3          My brother Teddy's suicide caused me to seriously

4   reevaluate just about everything I've ever done, and I have

5   had nothing but time to think this over and over for the

6   past 10 months.  What I have realized is that my words did,

7   in fact, have consequences.  Words, even the ones we only

8   type and do not say out loud, do have an impact on the

9   people to whom they're directed as well as the persons

10  reading them.

11         My experiences with the people at the D.C. Jail

12  fly in the face of a lot of the conclusions at which my

13  frustrations with society caused me to arrive, prompting me

14  to create such a disturbing online presence.  I never would

15  have imagined being able to form the friendships I have --

16  that I have made while in jail, some of which I feel have

17  the potential to be long-lasting and meaningful ones.  As

18  strange as it sounds, I believe my experience at the D.C.

19  Jail overall has been a blessing in disguise.  I have never

20  put as much time and effort evaluating the choices I have

21  made in the past in hopes of improving myself both mentally

22  as well as morally.  As much as I wanted to get my life on

23  track after Teddy's suicide and as I wanted to -- as I

24  honestly believe I could, I'm not sure I would have stood

25  the chance without the discipline that being locked up for

1    10 months has taught me.  My plan for the future is to find

2    a job that will allow me to save up as much money as I can

3    until I can afford to settle down in a home where I will

4    have the stability I need to start a family.  In the

5    meantime, I intend to stay away from the darker corners of

6    social media and marijuana, of course.  You will never see

7    me in your courtroom or any other courtroom as a criminal

8    defendant ever again.

9            Lastly, and most important, I intend to do the

10   best I can to repair whatever is still reparable of the

11   damage I have caused to the community and my relationship

12   with my friends and family.  I hope they can forgive me for

13   all that I have done.

14           Thank you, Your Honor.

15           THE COURT:  Thank you, Mr. Clark.

16           MR. BOS:  Thank you, Your Honor.

17           THE COURT:  All right.  You may be seated.

18           Mr. Cummings, do you have anything to add after

19   that?

20           MR. CUMMINGS:  I do not, Your Honor.

21           THE COURT:  All right.

22           (Brief pause.)

23           All right.  I have assessed the particular facts

24   of this case in light of the relevant 3553(a) factors,

25   including the sentencing guidelines, and I now want to

1    provide my thoughts for the record and for you, Mr. Clark,

2    about my considerations in regard to the nature of the

3    offense and your history and characteristics.

4         Let me begin with my considerations with regard to

5    the nature of the offense.  What I had prepared to say about

6    this was really mirrored by what Mr. Cummings mentioned, but

7    I'm sure your counsel would not disagree that gun and drug

8    use are a bad mix and they place the community in danger,

9    and Congress has recognized that by passing this law that I

10   don't see much in my courtroom, but it is there on the books

11   and Congress made that determination for a reason.  So that

12   mixture is a serious one, so serious that Congress jumped in

13   to say, We want to make it a felony offense for these two

14   things to go together.  So your offense is a serious one,

15   notwithstanding the nature of the drug you were taking and

16   notwithstanding that you had, in fact, registered your

17   firearm properly.

18        Turning your -- to your offense -- characteristics

19   as an offender, you have no convictions that count toward

20   your criminal history score, and although it's not part of

21   your offense I have to be concerned about the sympathy that

22   you expressed for those who have engaged in violence.  You

23   appear to have been, at least at one point, motivated by

24   racial or religious animosity, but really the particular

25   motivation doesn't matter.  We don't -- as Mr. Cummings

1      mentioned, we don't punish people merely for having hate in

2      their hearts about another group of people, and I'm glad --

3      pause here and say -- from what I'm prepared to say to say

4      I'm glad that it sounds like you have moved away from that,

5      but we don't punish people merely for that, but one of the

6      things I have to consider is protecting the public from any

7      further crimes that you might commit, and that you would

8      express some sympathy for folks who murdered strangers

9      simply because they were part of a particular group, that's

10     got to be something that I weigh and something that has to

11     concern me, but, as I mentioned, you don't have a record of

12     acting on whatever sympathies you might have had of actually

13     committing violence.  In fact, I don't think you've been --

14     as I recall, you haven't been convicted of any crime at all,

15     and that's very significant.  It's also significant to hear

16     you, quite movingly here today, talk about how your

17     experience in the D.C. Jail has changed you.

18             Turning to the types of sentences available, the

19     guidelines recommend 10 to 16 months of incarceration, and

20     the parties essentially agree that I sentence you to time

21     served which is the bottom of that range, and so I'm going

22     to do that.

23             And the only thing that is left to decide is how

24     long the supervised release should be and what conditions

25     should be imposed during that supervised release.  I do

1    think, given all the considerations here, that the three

2    years of supervised release is appropriate so that we can

3    ensure you're on the right path in terms of rehabilitation.

4    The conditions I impose are going to be important to that

5    and, essentially, I'll just say now I'm going to impose all

6    the conditions the Government has asked for.  Really, most

7    of these, I don't think your counsel has even objected to,

8    with the exception of the threats condition for this reason.

9    In my view -- we do have First Amendment concerns, but in my

10   view -- two things.  One is, I think, defendants have the

11   right to have a very clear sense of what their -- because

12   they can be revoked and sent back to jail, as everyone -- as

13   both lawyers know here, for violating those conditions of

14   release -- of supervised release, and I think if Mr. Clark

15   or any defendant were to engage in something that rose to

16   the level of a crime, that would certainly violate his

17   supervised release on its own and anything short of that, I

18   think, is very difficult to police, but more than policing,

19   it's very difficult for -- and, again, we may -- we -- this

20   may not at all be a concern for Mr. Clark; I'm speaking

21   generally -- for defendants to be able to conform their

22   activities to what that means short of a crime, I think, is

23   very difficult for them to know.

24           So I may well have -- to your lawyer's -- to

25   Mr. Bos's point, I may well have a motion to terminate this

1     supervised release early come my way, and I will certainly

2     -- I guess I, first of all, would expect that it might come

3     after a substantial amount of time, and I'll certainly give

4     that due consideration, but at the moment what I have in --

5     based on everything I have in front of me here, I think that

6     the three years at least to start is the way to go.  We'll

7     see how things go.

8            All right.  So Mr. Clark, if you and your attorney

9     would step up to the podium, please.

10           All right.  Sir, I will now impose the sentence

11    which I conclude, after considering all the 3553(a) factors,

12    is sufficient but not greater than necessary to comply with

13    the terms of sentencing.

14           Pursuant to the Sentencing Reform Act of 1984, and

15    in consideration of the provisions of 18 United States Code

16    3553 as well as the advisory sentencing guidelines, it's the

17    judgment of the Court that you, Jeffrey Raphiel Clark, are

18    hereby sentenced to time served.  You are further sentenced

19    to serve a 36-month, or 3-year, term of supervised release.

20    And in addition, you are ordered to pay a special assessment

21    of $100 in accordance with 18 United States Code 3013.

22           While on supervision, you shall abide by the

23    following mandatory conditions as well as the standard

24    conditions of supervision which are imposed to establish the

25    basic expectations for your conduct while on supervision.

1              The mandatory conditions include, one, you must

2      not commit another federal, state or local crime.

3              Two, you must not unlawfully possess a controlled

4      substance.

5              Three, you must refrain from any unlawful use of a

6      controlled substance.  You must submit to one drug test

7      within 15 days of placement on supervision and at least two

8      periodic drug tests thereafter, as determined by the Court.

9              Four, you must cooperate in the collection of DNA,

10     as directed by the probation officer.

11             You shall also comply with the following special

12     conditions:

13             First is mental health treatment.  You must

14     participate in a mental health treatment program and follow

15     the rules and regulations of that program.  The probation

16     officer, in consultation with the treatment provider, will

17     supervise your participation in the program in terms of the

18     provider, location, modality, duration and intensity.

19             Substance abuse treatment.  You must participate

20     in an in-patient and out-patient substance abuse treatment

21     program and follow the rules and regulations of that

22     program.  The probation officer will supervise your

23     participation in the program, again, in terms of provider,

24     location, modality, duration and intensity.

25             Third, substance abuse testing.  You must submit

1    to substance abuse testing to determine if you have used a

2    prohibited substance.  You must not attempt to obstruct or

3    tamper with the testing methods.

4          Four, vocational services program.  You must

5    participate in a vocational services program and follow the

6    rules and regulations of that program.  Such a program may

7    include job-readiness training and skills-development

8    training.

9          I guess it's five.  You shall not -- to the extent

10   -- this is probably already covered by the mandatory

11   conditions, but you shall not possess any firearms.

12         Six, you shall not reside in any dwelling where

13   firearms are present.

14         And, seven, if requested by the FBI, you are to

15   agree to threat-assessment meetings with the FBI up to four

16   times each year.

17         The Court finds that you do not have the ability

18   to pay a fine and, therefore, waives imposition of a fine in

19   this case.

20         The financial obligations are immediately payable

21   to the Clerk of the Court for the U.S. District Court, 333

22   Constitutional [sic] Avenue, NW, Washington, D.C. 20001.

23         Within 30 days of any change of address, you shall

24   notify the Clerk of the Court of the change until such time

25   as the financial obligation is paid in full.

1          The probation office shall release the presentence

2     investigation report to all appropriate agencies which

3     includes the United States Probation Office in the approved

4     District of residence in order to execute the sentence of

5     the Court.  Treatment agencies shall return the presentence

6     report to the probation office upon the defendant's

7     completion or termination from treatment.

8          Within 60 days of release from incarceration or

9     placement on supervision, you will appear before the Court

10    for a reentry progress hearing.  Before the hearing, the

11    probation officer will submit a report summarizing your

12    status and compliance with release conditions.  And if you

13    are supervised by a District outside the Washington, D.C.

14    metro area, the probation office in that District will

15    submit a progress report to the Court within 60 days of

16    commencement of supervision.  Upon receipt of the progress

17    report, the Court will determine if your appearance is

18    required.

19         Pursuant to 18 United States Code 3742, you have

20    the right to appeal the sentence imposed by me if the period

21    of imprisonment is longer than the statutory maximum or the

22    sentence departs upward from the applicable sentencing

23    guideline range and, if you choose to appeal, you must file

24    any appeal within 14 days after the Court enters judgment.

25         And, as determined in 28 United States Code 2255,

1    you also have the right to challenge the conviction entered

2    or sentence imposed if new or currently unavailable

3    information becomes available to you or on a claim that you

4    received ineffective assistance of counsel in entering a

5    guilty plea to the offense of conviction or in connection

6    with sentencing.

7           If you are unable to afford the costs of an

8    appeal, you may request permission from the Court to file an

9    appeal without costs to you.

10          And, finally, pursuant to the D.C. Circuit's

11   opinion in United States v. Hunter, 809 F.3d 677, decided on

12   January 12th, 2016, are there any objections to the sentence

13   imposed that are not already noted on the record?

14          MR. BOS:  No, Your Honor.

15          MR. CUMMINGS:  Not for the Government, Your Honor.

16          THE COURT:  All right.  This concludes my judgment

17   in this case.

18          Mr. Clark, I hope when this sentence is

19   complete -- I think, from your statement there -- I hope you

20   haven't committed any additional crimes, but I don't expect

21   it, given your track record and given what you've told me

22   here today.  I hope you've kicked whatever drug problem you

23   still may have.  I hope you're employed -- either employed

24   or on the way to be employed or in school, and I think you

25   have all that in you, as the prosecutor and your attorney

1   mentioned, given your background and you have -- you

2   obviously have a family that is very supportive, some of

3   whom cared enough about you to take possession of those

4   firearms when they did, and that says a lot.

5          None of the conditions of supervised release I

6   imposed are going to require you to change your thoughts

7   about certain groups of people, nor could they.  Maybe

8   you've already made that change.  But on that score, let me

9   just say this.  I think having hate in your heart over

10  anything, whether it be the race of your neighbor or some

11  grudge or slight that affected you personally a long time

12  ago, whatever, none of that is going to help get you where

13  you need to be.  It's probably just going to make that more

14  difficult.  Hating other people, it's not going to give you

15  a strong and healthy body or give you a future to be excited

16  about, and it ultimately isn't going to make you happy and

17  proud of who you are, but if you focus all your energy on

18  getting where you need to be in terms of rehabilitation, I

19  think you'll find that you probably don't have much time for

20  that other stuff, anyway.

21         Is there any else -- anything else that either

22  counsel think I need to address today?

23         MR. CUMMINGS:  Not on behalf of the United States,

24  Your Honor.

25         MR. BOS:  I don't think so, Your Honor.  I -- just

1   as a logistical matter, I just want to make sure that when

2   he goes back to the jail, that there's some type of release

3   order for them, assuming that the judgment and commitment

4   order won't be issued probably until either later today and,

5   because it's Friday, I want to make sure --

6           THE COURT:  We'll --

7           (Brief pause.)

8           All right.  We will make sure there's a release

9   order --

10          MR. BOS:  Okay.

11          THE COURT:  -- signed by me promptly.

12          And, Mr. Cummings, I will entertain a motion to

13  dismiss Count 2 of the charging document.

14          MR. CUMMINGS:  Yes.  The Government hereby orally

15  moves to dismiss Count 2 of the indictment pursuant to the

16  plea agreement.

17          THE COURT:  All right.  And it shall be dismissed.

18          MR. BOS:  Thank you, Your Honor.

19          THE COURT:  All right.  If there's nothing

20  further, then, good luck, Mr. Clark.

21          And counsel and the parties are dismissed.

22          MR. BOS:  Thank you, Your Honor.

23          THE DEPUTY CLERK:  All rise.  This Honorable Court

24  is adjourned.

25          (Proceedings concluded at 10:57 a.m.)

1              * * * * * * * * * * * * *

2              CERTIFICATE OF OFFICIAL COURT REPORTER

3      I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify

4      that the above and foregoing constitutes a true and accurate

5      transcript of my stenographic notes and is a full, true and

6      complete transcript of the proceedings to the best of my

7      ability, dated this 27th day of January 2020.

8                              /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                               Official Court Reporter
9                              United States Courthouse
                               Room 6722
10                             333 Constitution Avenue, NW
                               Washington, DC 20001
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25